```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:  10/26/22
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
FCP ENTERTAINMENT PARTNERS, LLC,

                                    Plaintiff,

            -against-                                          22-cv-2768 (LAK)

HAL LUFTIG COMPANY, INC., et ano.,

                                    Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
HAL LUFTIG,

                                    Plaintiff,

            -against-                                          22-cv-3697 (LAK)

FCP ENTERTAINMENT PARTNERS, LLC,

                                    Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x


                        **MEMORANDUM AND ORDER**


LEWIS A. KAPLAN, *District Judge.*

            These actions are before the Court on FCP Entertainment Partners, LLC ("FCP")'s

motion to confirm an arbitration award and the corresponding petition of Hal Luftig to vacate that

award.


*Facts*

            The arbitral award at issue adjudicated a revenue dispute in connection with the

parties' live theater production contract.  In 2001, FCP entered into an agreement with Hal Luftig

Company ("HLC"), Mr. Luftig's loan-out company, to furnish Mr. Luftig's "full time, exclusive

2

services" to "serve as president of FCP and, *inter alia*, [to] seek out and attempt to secure rights in literary and theatrical works for FCP's investment."[1]   The agreement, which the parties amended in 2007 (the "2007 Agreement"), continued in effect until HLC and Mr. Luftig (collectively, "Luftig") "formally terminated" it on January 1, 2015.[2]

The 2007 Agreement secured to FCP a percentage of

"[a]ny cumulative income realized by the LLC by reason of its acting as a general partner, managing member and/or 'introducer,' including, without limitation, any executive producer fee, any share of adjusted net profit allocable to producer activities, [and] any cash office charge and any producer royalty, including sums which would normally be retained by an introducer and not paid over to the introducer's investors[.]"[3]

As noted in the Arbitrator's Interim Award, one of the productions with which FCP and HLC became involved was a stage adaption of the film *Kinky Boots*:

In 2005, producer Daryl Roth approached Luftig about doing a Broadway show based on the *Kinky Boots* movie. (Tr. 5/27 at p. 135.) Luftig then approached Trepp who agreed to provide some of the show's early funding. Between 2009 and 2011, Trepp invested $335,000 in this show. (C-49.) Trepp chose to withdraw his investment and his money was returned to him as follows: $125,000 on 5/18/12; $5,000 on 3/5/1; and $160,000 on 3/5/13. (C-49.) Because the show was fully funded by the time Trepp was repaid in mid-March 2013 (Tr. 5/26 at p. 224), Luftig was able to instantly replace Trepp's investment with funds from other investors and the show open a month later."[4]

FCP claims that it learned upon termination of the Agreement of a "careful and

---

[1]   First Amended Petition to Confirm Arbitration Award ("FCP Petition") [Dkt 21, 22-cv-2768] ¶ 11.   All docket numbers referenced herein correspond to 22-cv-2768 unless otherwise noted.

[2]   Interim Award [Dkt 5-9], at 6.

[3]   2007 Agreement [Dkt 5-2] § 6.

[4]   Interim Award [Dkt 5-9], at 6.

3

calculated plan to misappropriate the revenues of Kinky Boots and other productions which should have been distributed to FCP."[5]  At a high level, FCP's claim is that Luftig failed to report and improperly received significant revenues that were subject to division in accordance with Section 6 of the 2007 Agreement.

Section 6 of the 2007 Agreement provided that income earned with respect to any "Vested Project" would continue in accordance with the enumerated distribution waterfall notwithstanding contract expiration or termination. As recounted by the arbitrator, Luftig's *Kinky Boots* production earned significant post-termination income, FCP's proper share of which would have amounted to $5,379,724.14.[6]  Although FCP received at least $1.3 million in post-termination revenues by the date of the Interim Award, Luftig eventually took the position that even those payments were made in error.  During the arbitration, Luftig argued that FCP was not entitled to any post-termination revenues because the show did not meet the contract definition of a "Vested Project."  On that theory, Luftig asserted unjust enrichment and other counterclaims against FCP.

*The Arbitration Award*

The arbitrator issued an Interim Award on July 21, 2021 and a Final Award – which incorporated the Interim Award and a February 4, 2022 Order on damages [Dkt 5-10] – on April 1, 2022.[7]  The arbitrator concluded, *inter alia*, that *Kinky Boots* was 'a vested project' and that both

---

[5]     FCP Petition ¶¶ 15, 17.

[6]     Final Award [Dkt 13-10], at 4.

[7]     Dkt. 11 Ex. A [hereinafter "FA"].

Luftig parties "breached the Agreement by failing to pay the 55% share of LLC income due to FCP under the so-called 'Waterfall Provisions' of paragraph 6 of 2007 Agreement in relation to the production of Kinky Boots."[8] Specifically, the arbitrator concluded that Luftig was liable with respect to three of FCP's eleven counts: "Kinky Boots West End / European Tour Income" (Count 1), "Subsequent *Kinky Boots'* United States non-equity Tour Income" (Count 2), and "*Kinky Boots World Tour Income*," (Count 4).[9]

The Final Award confirmed that Luftig "breached the Agreement" and determined that they "shall pay Claimant the amount of $2,638,925.78 in the form of compensatory damages." It concluded that Luftig personally and the loan-out company were "jointly and severally liable" for "the damages described in the Interim award and therefore also in the Final Award."[10] Although FCP proceeded against Luftig on both breach of contract and breach of fiduciary duties, the arbitrator's analysis as to counts 1, 2, and 4 referred only to breach of contract. Indeed, he denied all claims which he analyzed as involving alleged breaches of fiduciary duty.[11]

In response to the Final Award, Luftig sought clarification as to whether "*both* Respondents or *just Respondent HLC*" was liable for breaching the Agreement. They argued that because "the Interim Award dismissed [FCP's] assertion of breach of fiduciary duty" and because

---

[8]    Final Award [Dkt 13-10] at 4.

[9]    The arbitrator also concluded that FCP breached the agreement by commencing a lawsuit in Los Angeles County Superior Court in violation of the Agreement's arbitration provision. Interim Award [Dkt 5-9], at 22.

[10]    *Id.*

[11]    *Id.* at 12-17.

5

the "Interim Award relied on [FCP's] arguments that the 2007 Agreement . . was an agreement between two business entities, FCP and HLC, not Mr. Luftig," there was no basis on which to hold Mr. Luftig personally liable as a non-party to the contract. After considering further briefing on that issue, the arbitrator clarified on November 4, 2021 that the "Interim Order is correct as written. Both . . . [HLC] and Hal Luftig as an individual [] are [jointly] and severally liable for the damages described in my Interim Order."[12]

FCP thereafter petitioned for confirmation on April 4, 2020 [22-cv-03697]. Mr. Luftig filed the corresponding petition to vacate on May 6, 2020 [22-cv-02786].


*Discussion*

Luftig advances five principal arguments for vacatur: that (1) the Final Award cannot be confirmed against Mr. Luftig because he was not a party to the 2007 Agreement; (2) the arbitrator improperly pierced the corporate veil in finding Luftig jointly and severally liable; (3) the arbitrator improperly found that the 2007 Agreement had been modified by the parties' conduct; (4) *Kinky Boots* was not a "Vested Project" under the 2007 Agreement and that the arbitrator abused his discretion in so holding; and (5) that the arbitrator erred in failing to invalidate the 2007 Agreement under California's restrictions on post-employment non-competition agreements.

Grounds 3 through 5 do not merit significant discussion. All three rulings proceed from California precedents that at least arguably support the arbitrator's construction. This Court is without power to reverse or vacate an arbitration award based on simple misinterpretation, no

---

12

*See* Luftig Petition [22-cv-03697, Dkt. 14] ¶ 58; Dkt. 4-11, 22-cv-03697.

matter how erroneous the legally supported construction may appear.[13]

Luftig nonetheless points to a range of legal authority – such as Judicial Council of California Jury Instructions and analogous judicial interpretations of other contracts – that tends to support their desired outcome.   However, they have come nowhere close to showing that the arbitrator manifestly disregarded a clearly applicable and explicit principle of California contract law in construing the 2007 Agreement.   Vacatur premised on "manifest disregard"[14] imposes a "heavy burden" that requires "more than error or misunderstanding with respect to the law."[15] Similarly, the Court has not been presented with any indication that the findings of fact underlying the arbitrator's determination that *Kinky Boots* was a "Vested Project" was clearly erroneous.[16]

Thus, the only notable legal question before the Court is whether the arbitrator's finding that both Mr. Luftig himself and his loan-out company "breached the agreement" and thus are "are jointly and severally liable" for the $2,638,925.78 in compensatory damages warrants vacatur under the FAA.

---

[13]

*See, e.g., Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 214 (2d Cir. 2002).

[14]

*T.Co Metals, LLC v. Dempsey Pipe & Supply, Inc.*, 592 F.3d 329, 340, 346 n.10 (2d Cir. 2010); *cf. Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.*, 548 F.3d 85, 94 (2d Cir. 2008), *rev'd and remanded on other grounds*, 559 U.S. 662 (2010) (explaining that "manifest disregard" does not amount to a fifth ground for vacatur "separate from those enumerated in the [Federal Arbitration Act]").

[15]

*T.Co Metals, LLC*, 592 F.3d at 339 (citations and internal quotation marks omitted); *cf. United Paperworkers Int'l Union, AFL-CIO v. Misco, Inc.*, 484 U.S. 29, 37-38(1987) ("Because the parties have contracted to have disputes settled by an arbitrator chosen by them rather than by a judge, it is the arbitrator's view of the facts and of the meaning of the contract that they have agreed to accept.").

[16]

*Id.* (citing *ConnTech Dev. Co. v. Univ. of Conn. Educ. Props.*, 102 F.3d 677, 686 (2d Cir. 1996)).

In this Circuit, arbitration awards are subject to "very limited review" to "avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation."[17]  An award should be confirmed so long as there is a "barely colorable justification" for the outcome that the arbitrator reached, even if the Court "disagree[s] with it on the merits."[18]  It is equally well-established that "an arbitrator's rationale for an award need not be explained,"[19] and an award should be confirmed so long as "a ground" for the arbitrator's decision can be "inferred from the facts of the case."[20]

In this case, the Agreement's plain language makes clear that Mr. Luftig could be made a party to the contract by FCP's "election" to substitute him for HLC should certain conditions have obtained.  However, nothing in the Final Award or the documents it incorporates suggests that were more than two parties to the 2007 Agreement at any given time, regardless of whether FCP elected to substitute Hal Luftig or not.

That said, the Court does not believe Luftig has sustained the heavy burden that attaches in this posture.  Here, the Court faces no difficulty in inferring "a ground" on which the arbitrator's decision to award compensatory damages for breach in an amount for which both Mr. Luftig and the loan-out company are jointly and severally liable is proper.  It is perfectly clear from

---

17

      *Rich v. Spartis*, 516 F.3d 75, 81 (2d Cir. 2008) (quoting *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*, 103 F.3d 9, 12 (2d Cir.1997)) (internal quotation marks omitted).

18

      *Landy Michaels Realty Corp. v. Local 32B–32J Serv. Employees Int'l*, 954 F.2d 794, 797 (2d Cir. 1992).

19

      *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 110 (2d Cir. 2006).

20

      *Barbier v. Shearson Lehman Hutton, Inc.*, 948 F.2d 117, 121 (2d Cir.1991).

8

the Final Award and the documents it incorporates that (1) Hal Luftig and HLC both are liable for damages; and (2) those damages flow from failure to pay FCP its share of post-termination *Kinky Boots* income in accordance with the schedule set out in the 2007 Agreement.  Even if Mr. Luftig never was a formal party to the contract, the arbitrator's award leaves no doubt that he bears sufficient responsibility for that breach so as to support liability sounding in tort, if not on other theories.  The standard here simply is whether the Court can discern any "barely colorable justification" for the outcome that the arbitrator reached, regardless of whether it has been raised. Indeed, Luftig's contention that the arbitrator could not properly conclude that FCP pierced the corporate veil because FCP "made no arguments" to that effect is entirely untethered from this Circuit's interpretation of the FAA.[21]

Judicial confirmation of an arbitration award is "a summary proceeding that merely makes what is already a final arbitration award a judgment of the court."[22]  In this case, the Final Award's meaning and effect are entirely clear and grounded in colorable legal justification.  There has been no allegation of corruption, fraud, partiality, misconduct, or any failure to render a definite award on the subject matter by the arbitrator.  Accordingly, the FAA commands that the award be confirmed.[23]

---

[21]   *See, e.g.*, *STMicroelectronics, N.V. v. Credit Suisse Sec. (USA) LLC*, 648 F.3d 68, 78 (2d Cir. 2011) ("Where . . . the arbitrators do not explain the reason for their decision, we will uphold it if we can discern any valid ground for it.").

[22]   *D.H. Blair & Co.*, 462 F.3d at 110 (quoting *Florasynth, Inc. v. Pickholz*, 750 F.2d 171, 176 (2d Cir.1984)).

[23]   Contrary to Luftig's contention, the presence of contract language authorizing review of legal error does not expand the scope of review under the FAA.  *See, e.g.*, *Biller v. Toyota Motor Corp.*, 668 F.3d 655, 664-65 (9th Cir. 2012).

*Conclusion*

For the foregoing reasons, FCP's amended petition to confirm the arbitration award [22-cv-02768, Dkt 21]  is GRANTED and Mr. Luftig's amended petition to vacate [22-cv-03697, Dkt. 14] is DENIED.  The Clerk shall close both cases.


SO ORDERED.

Dated:          October 26, 2022

_____
                                        Lewis A. Kaplan
                                United States District Judge